IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| KLAMATH COMMUNITY COLLEGE, | Case No. 1:21-cv-01700-CL |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATION** |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS and DENIS MCDONOUGH, *in his official capacity as Secretary of the U.S. Dept. of Veterans Affairs,* | |
| Defendant. | |

CLARKE, Magistrate Judge.

Plaintiff Klamath Community College ("KCC") brings this cause of action against the United States Department of Veteran's Affairs ("VA") under the Administrative Procedures Act and the United States Constitution. The defendant VA moves to dismiss the case for lack of a final agency action and for failing to state a cognizable claim for relief. For the reasons below, the motion (#26) should be DENIED.

## BACKGROUND

Plaintiff KCC challenges Defendant VA's efforts to recover approximately $1.3 million in flight-school tuitions VA paid to KCC under the Post-9/11 G.I. Bill. KCC alleges that the process VA is using to pursue recovery of these payments is procedurally and substantively defective because VA has not provided KCC an administrative procedure called the School Liability Process ("SLP"). The Amended Complaint asserts claims under the Administrative Procedure Act ("APA") and a separate claim under the Fifth Amendment Due Process Clause.

**1. Statutory and Regulatory Background**

**a. VA benefits and overpayments**

The Post-9/11 Veterans Educational Assistance Act of 2008 ("Post-9/11 G.I. Bill") provides eligible veterans with education benefits. These benefits include tuition, and money for housing and books. 38 U.S.C. §§ 3301 et seq. VA sends money directly to veterans for housing and books, and pays tuition benefits directly to schools, as required by law. 38 U.S.C. § 3313(h). Veterans can use these education benefits for flight training at a public college or university. 38 U.S.C. § 3313(g)(3)(C).

VA can recover overpayments of education benefits. 38 U.S.C. § 3685. Section 1.911 of title 38, Code of Federal Regulations, specifies the process by which VA generally recovers debts resulting from overpayment of VA benefits, including education benefits. This process includes written notice of the amount of the debt, the reasons for the debt, the right to request waiver or a hearing on the debt, and the right to appeal the decision underlying the debt. 38 C.F.R. § 1.911.

Section 1.911(a) specifies that a separate administrative process – the SLP – applies to "school liability" debts. In the SLP, a Committee on School Liability (the "Committee")

determines liability via an administrative process that includes additional steps as compared to 38 C.F.R. § 1.911. These steps include (1) a prehearing conference to discuss the record upon which potential liability is based; (2) a hearing with testimony and evidence before a panel of the Committee; (3) a written decision by the Committee; and (4) if the school disagrees with the Committee's decision, an appeal of any legal or factual errors to the School Liability Appeals Board, which can reverse, affirm, modify, or remand the Committee's decision. *See* 38 C.F.R. § 21.4009; VA Manual M22-4 ("M22-4"), Part 1 §§ 7.09–7.12.

### b. The Treasury Offset Program

Congress requires federal agencies to refer delinquent nontax debts to United States Department of Treasury ("Treasury") for collection. 31 U.S.C. §§ 3716(c)(6), 3720A(a). To collect referred debts, Treasury operates a centralized Treasury Offset Program ("TOP"). 31 C.F.R. § 285.5(a)(1). TOP reviews payees to see if they have referred debts. *See id.* § 285.5(b)–(d). If they do, Treasury offsets payment to the payee and pays that amount to the creditor agency. *Id.* § 285.5(f)–(j).

Creditor agencies must comply with certain procedures before referring a debt to Treasury for collection by administrative offset to avoid erroneous deprivation. The procedures include giving the debtor (1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section; (2) an opportunity to inspect and copy the records of the agency related to the claim; (3) an opportunity for a review within the agency of the decision of the agency related to the claim; and (4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim. 31 U.S.C. §§ 3716(a)(1)–(4); *see also* 31 U.S.C. § 3720A(b)(1). After creditor agencies complete these efforts without resolution of the

debt, Treasury will notify the debtor of the offset, the identity of the requesting creditor agency, and who to contact within the creditor agency about the offset. 31 U.S.C. § 3716(c)(7); 31 C.F.R. § 285.5(g)(3).

**2. Factual Background[1]**

Some KCC students receive education benefits under the Post-9/11 G.I. Bill. FAC ¶ 2. KCC's aviation flight programs included the following AAS Degrees (collectively, the "KCC Aviation Programs"): (1) Aviation Science Airplane AAS; and (2) Aviation Science Helicopter AAS. FAC ¶ 25; Scott Decl. ¶ 2. In order for veteran students to use Post- 9/11 G.I. Bill benefits to pay for a particular course of education, that course must be approved. FAC ¶ 24. In Oregon, the VA delegated its authority to approve and monitor programs to Oregon's Higher Education Coordinating Commission SAA ("Oregon's SAA"). *See* 38 U.S. Code § 3671; FAC ¶ 3; Scott Decl. ¶ 4. KCC received approval for the KCC Aviation Programs from both Oregon's SAA and the VA for all relevant time periods. FAC ¶ 26; Scott Decl. ¶ 5.

Although it varies by year, the VA conducts compliance surveys (i.e., audits) of the programs and recipients subject to funding from the Post-9/11 G.I. Bill. KCC claims that, from at least 2014 to 2016, KCC's annual compliance surveys did not indicate any material discrepancies in the KCC Aviation Programs or the existence of any alleged overpayments of Post-9/11 G.I. Bill benefits. FAC ¶¶ 26, 31, 32; Scott Decl. ¶ 6. On June 29, 2017, Mr. Stewart Land—an Education Compliance Survey Specialist ("CSS") from the VA's Muskogee office—notified KCC that he was taking over the school's ongoing Annual Compliance Survey and would begin the survey on July 17, 2017. FAC ¶ 34. In addition, he requested documents dating

---

[1] For purposes of this motion, the Court will assume the facts are true as pled in the First Amended Complaint ("FAC") (#25), except where a dispute of fact is noted.

Page 4 – FINDINGS AND RECOMMENDATION

back to 2013—a time period already subjected to an Annual Compliance Survey. FAC ¶ 34; Scott Decl. ¶ 7.

On or about July 17-20, 2017, the VA conducted the Annual Compliance survey at KCC (the "July 2017 Compliance Survey") related to the KCC Aviation Programs. FAC ¶ 36; Scott Decl. ¶ 8. On July 31, 2017, the VA directed Oregon's SAA to suspend the KCC Aviation Programs. Scott Decl. ¶ 9. On August 1, 2017, the CSS emailed KCC stating that the VA would not issue any status letter relating to the 2017 Compliance Survey until it was complete, and that any disagreement regarding the survey findings would be discussed "at the exit interview." FAC ¶ 38. KCC claims no exit interview was ever conducted. FAC ¶ 39.

On January 3, 2018, KCC learned that its Aviation Programs were approved and reinstated by the SAA. FAC ¶ 41. However, on January 18, 2018, VA sent a letter to KCC citing ten categories of alleged discrepancies in their programs but did not identify any veteran students in the letter. FAC ¶ 42; Scott Decl., ¶ 10.

On April 3, 2018, the VA issued KCC an additional report, (the "April Detailed Compliance Letter"), to provide information concerning the individual discrepancies listed in the VA's findings letter of January 18, 2018. FAC ¶ 44. The April Detailed Compliance Letter stated:

> After [Mr. Land's] consultation with Coach Sherry Scott on October 27, 2017, the decision was made that no benefits (for any class) should be paid for any VA student enrolled in any of the flight degree programs for any period beginning on or after November 1, 2015.

FAC ¶ 45.

Starting in March 2018, VA sent multiple letters notifying KCC of Post-9/11 G.I. Bill tuition benefits that VA overpaid to KCC on behalf of 29 students enrolled in flight school training at KCC. FAC ¶ 52. These letters were sent from the VA's Muskogee RO (the

"Muskogee Letters"). KCC claims that almost all of the Muskogee Letters provided an inapplicable reason for the overpayment. FAC ¶ 52. For instance, on several occasions, the VA's Muskogee RO would state that the reason the benefits were considered an overpayment was because: "The school submitted an amended [Form] 1999 showing a reduction in tuition and fee charges or a reduction in Yellow Ribbon amount, or both." FAC ¶ 53. A Form 1999 is used to alert the VA that a student's enrollment has changed. *Id.* KCC claims that in almost all cases, KCC never actually submitted a Form 1999 for the student in question. *Id.* Importantly, none of the Muskogee Letters indicated if the alleged overpayments were connected to the 2017 Compliance Survey. FAC ¶ 54

Within a month of the Muskogee Letters, the Debt Management Center ("DMC"), which is the collection division of the VA, started sending letters to KCC. FAC ¶ 55. The letters stated:

> The Department of Veteran Affairs recently notified you that education benefits were adjusted due to non-entitlement. Since the funds for this enrollment were sent directly to the school, we ask that you return these funds.

FAC ¶ 55. KCC claims that nothing in any of the correspondence specified any reason for why KCC was being held liable for the alleged overpayment. *Id.*

On or about June 18, 2018, KCC received a letter from the VA responding to a letter from KCC in April 2018. FAC ¶ 57. The VA's letter indicated that the Muskogee RO had unilaterally declared the debt "valid." FAC ¶ 57; Scott Decl. ¶ 16. KCC claims that it continued to present additional arguments and disputes to the VA. KCC received a response letter from the DMC on February 14, 2019, issuing a blanket denial to reconsider the alleged debt. This letter was sent by Mr. Land—the same person that had conducted the 2017 Compliance Survey. FAC ¶ 58; Scott Decl. ¶ 17.

On November 22, 2019, the VA sent yet another letter stating that the VA had notified the DMC that the "review of compliance findings is complete, and the debts established as a result of the compliance survey are valid." FAC ¶ 59; Scott Decl., ¶ 24.

On December 31, 2020, KCC issued a letter to the VA reiterating its disagreements with the findings of the 2017 Compliance Survey. In that letter, KCC submitted a rebuttal for each individual student for whom the VA claimed a debt was owed. Martinson Decl., ¶ 5. KCC claims the VA has never responded to the December 31, 2020, letter and has not provided KCC with the School Liability Process as outlined by the regulations. Martinson Decl., ¶ 6.

Between February 26, 2020, and April 30, 2021, VA referred KCC's Tuition Overpayments to TOP for collection.[2] Lawrence Decl., ¶ 3. Between March 16, 2020, and November 19, 2021, Treasury offset KCC funds totaling $83,073.12 (the "Offset") and credited the amount to VA for the Tuition Overpayments. *Id.*

On November 24, 2021, KCC filed the case at bar against the VA and the Treasury. On January 12, 2022, VA, through counsel, offered to refund KCC the Offset and provide KCC the SLP for the Tuition Overpayments. On April 1, 2022, and April 6, 2022, VA refunded KCC $83,130.11. Lawrence Decl., ¶ 4. Currently no portion of the Tuition Overpayments is referred to

---

[2] Collection of the debt was paused for a time. On June 9, 2020, in response to KCC's repeated disputes related to the debt, the VA's Chief of Operations of the VA's Debt Management Center issued a letter to KCC stating:
> Due to the COVID-19 situation, DMC has temporarily paused collections through the Department of Treasury's Offset Program (TOP) for all debts owed to VA. DMC continues to send collection letters to schools, including the third collection letter regarding referral to TOP within sixty days; however, schools are not being offset at this time. DMC continues to evaluate the situation with COVID-19 and has not yet set a date for TOP collections to resume. DMC will update our website … with this information when a determination is made.

FAC, Ex. 2 [ECF #25-2]. KCC claims VA never provided KCC with any notice that collection of the alleged debt was going to be activated again. Scott Decl., ¶ 22.

TOP for collection. Id., ¶ 5. On April 11, 2022, VA sent KCC a letter confirming that "VA's offer to provide KCC the SLP remains open." Glenn Decl., Ex. 1. In documents submitted to this Court by the VA, including a signed declaration, VA states that it "commits to adjudicate the KCC Tuition Overpayments via the SLP and only collect the associated debt, if any, upon a finding of liability by the Committee or the School Liability Appeals Board." Glenn Decl., ¶ 8. KCC moves to strike this declaration and the supporting letter from the record.

On April 29, 2022, KCC filed an Amended Complaint against VA. KCC has dropped the Treasury defendants from the case, but it continues to assert claims under the APA and the Fifth Amendment challenging VA's efforts to recover the Tuition Overpayments. It also asserts a claim for injunctive relief. Am. Compl., ¶¶ 96–134.

### 3. VA's disputes and agreements with other Oregon community colleges

KCC is not the only Oregon community college to request the VA apply the SLP to the recovery of tuition overpayments for students enrolled in aviation programs. On April 10, 2020, Central Oregon Community College ("COCC") sued VA demanding VA provide it "the School Liability Process with respect to all alleged overpayments—for tuition as well as housing and book allowances ...." D. Or. No. 6:20-cv-00594-MK, ECF 1 at 27. VA claims that it denied that COCC's tuition overpayments should be submitted to the SLP because, same as here, VA paid the tuition benefits directly to the school. *See* M22-4, Part 1 § 7.05 n.2 ("Payments made directly to the school should not be included in the review of potential school liability ...."). However, VA had referred to the SLP books and housing overpayments paid directly to COCC students to determine if COCC should be liable for those payments. Because adjudication of the books and housing overpayments involved overlapping students and issues as the tuition overpayments, and "to avoid unnecessary litigation," VA agreed to submit COCC's disputed tuition overpayments

to the SLP and suspend collection of the overpayments pending completion of that process. *See* D. Or. No. 6:20-cv-00594-MK, ECF 37 at 7 (§ 1.1) ("Plaintiff agrees to dismiss the Complaint against all Defendants ... and Defendant VA agrees to provide Plaintiff the [SLP]."). VA also agreed to "withdraw all debt notice and collection referrals for the Tuition Debt" and to "not refer any future debt notices for the Tuition Debt or the Books and Housing Debt ... to any agency or third party for collection until the time for [COCC] to appeal to the [School Liability Appeals Board] ... has passed without an appeal being filed or the process set forth in § 1.3 of this Agreement is complete." *Id.* at 8 (§ 1.4). This settlement agreement resolved COCC's lawsuit, and COCC dismissed the case on September 21, 2021.

In October 2021, Treasury offset over $1.8 million that Portland Community College ("PCC") received under the American Rescue Plan Act of 2021 and credited it to VA for tuition overpayments. PCC, through its counsel, promptly contacted VA about the offset and requested that the overpayments be submitted to the SLP. In a letter signed and dated November 15, 2021, VA agreed to provide PCC the SLP for the tuition overpayments. Glenn Decl. Ex. 2 at 5. The November 15 Letter explained that overpayments made directly to students for books and housing are already subject to the SLP, while the tuition overpayments made directly to PCC are not. But, "[b]ased on PCC's request and the overlap between the students and issues involved in the debts based on books, housing stipend, tuition, and fees, VA agrees to use the SLP for the 2017-18 debts regardless of whether payment was issued to the school or the student." *Id.* VA also agreed to "refund the amounts offset by [Treasury] in October 2021 ...." *Id.* at 6.

Unlike COCC, PCC continues to litigate its claims that tuition overpayments must be submitted to the SLP despite VA's agreement to provide PCC that process. On April 18, 2022, VA filed a motion to dismiss PCC's Second Amended Complaint. *See* D. Or. No. 3:21-cv-

01658-AR, ECF 22. As part of its motion to dismiss, VA confirmed that it "commits to adjudicate the Overpayments in the School Liability Process and only collect the associated debts, if any, upon a finding of liability by the Committee on School Liability or the School Liability Appeals Board." Glenn Decl. Ex 2 at 4. The motion to dismiss is currently under advisement.

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the jurisdiction of the court over the subject matter of the complaint. When jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of establishing jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A 12(b)(1) motion may be either "facial" or "factual." *Id.* A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F,3d 1130, 1133, n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). "[N]o presumptive truthfulness attaches to plaintiff's allegations" and the court may "hear evidence regarding jurisdiction and resolv[e] factual disputes where necessary." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citation omitted); *Safe Air for Everyone*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint may be dismissed when there is "either a lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal claim." *Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*, 764 F.3d 1019, 1023 (9th Cir. 2014) (quoting *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011)).

## DISCUSSION

### I. VA's 12(b)(1) motion to dismiss KCC's APA claims should be denied.

Plaintiff KCC brings three claims directly under the APA. The first alleges that "VA's conclusion that KCC owes approximately $1.3 million (or any amount) in overpayments" is arbitrary and capricious. FAC ¶ 97 (First Claim for Relief). The second claims that "VA's ultimate determination that KCC owes approximately $1.3 million (or any amount) in overpayments must be set aside" because the explanations for those findings are "inadequate." *Id.* ¶¶ 120–21 (Third Claim for Relief). The third claims that "VA's decision to retroactively revoke its previous approval of the KCC Aviation Programs" is arbitrary and capricious. *Id.* ¶ 127 (Fourth Claim for Relief).

Defendant VA moves to dismiss these three claims fail for lack of a final agency action. As discussed below, because VA sent letters declaring the debt "valid," referred the debt to the Treasury's TOP, and accepted Treasury's offset of the funds on the debt, and cancelled KCC's aviation programs, the agency's actions can be considered "final" for purposes of this litigation. Additionally, Plaintiff KCC claims, in part, that VA's decision not to provide the SLP was a failure to act, which is an exception to the final decision requirement. The motion to dismiss KCC's APA claims should be denied.

The APA provides a limited waiver of the government's sovereign immunity for agency decisions "made reviewable by statute and final agency action for which there is no other adequate remedy in court." *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) (quoting 5 U.S.C. § 704). "Section 704 reflects a congressional policy against premature judicial intervention into the administrative process, and in favor of courts resolving only disputes with concrete legal stakes." *Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 747 (N.D. Cal. 2019). "As a general matter, two conditions must be satisfied for agency action to be 'final.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). First, "the action must mark the 'consummation' of the agency's decisionmaking process," and "must not be of a merely tentative or interlocutory nature." *Id.* (citation omitted). Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178 (citation omitted).

VA's actions satisfy the two conditions for finality in three ways. First, KCC alleges that VA sent KCC multiple letters declaring the tuition overpayment debt "valid." On or about June 18, 2018, KCC received a letter from the VA declaring the debt "valid." Scott Decl. ¶ 16. On February 14, 2019, the VA sent another letter issuing a blanket denial to reconsider the alleged debt, and determined the debt was again "valid." Scott Decl. ¶ 19. On November 22, 2019, the VA sent yet another letter stating that the VA had notified its debt collection division, the DMC, that the "review of compliance findings is complete, and the debts established as a result of the compliance survey are valid." Scott Decl. ¶ 24.  These letters communicate to KCC that VA would not be conducting any further process to determine the validity of the debt, thus they mark the consummation of the agency's decisionmaking process.

Second, VA referred the debt to DMC and then transferred the debt to the Treasury for collection. Treasury's process is to offset the debt and begin collection efforts. Treasury regulation 31 C.F.R. § 285.12(i) provides that "[b]efore a debt may be transferred to Fiscal Service or another debt collection center, the [VA] must certify, in writing, that the debts being transferred are valid, legally enforceable, and that there are no legal bars to collection." Therefore, VA's transfer constitutes an action from which legal consequences will flow, signaling that a final decision has been made as to the validity of the debt in the eyes of the agency. While VA has now returned the offset funds to KCC pending further review, VA has not formally revoked the certification that the debt is valid, therefore the legal status of the debt is still collectible, and the legal consequences could still flow from the decision.

Third, VA took action to revoke KCC's aviation programs. While this action was also later reversed, KCC alleges that the revocation of the programs had immediate legal consequences that changed the status of a federally funded program. This independently meets the criteria requiring that the decision be one for which legal consequences will flow.

In addition, KCC alleges the VA refused to offer any appeal process or hearing process regarding the Tuition Overpayments until after litigation was initiated. VA continues to contend in court filings that the type of debt at issue in this case is not actually subject to the SLP and that VA is not required to provide such a process. The alleged failure of the VA to offer the SLP, or any kind of process for disputing the Tuition Overpayments is an alleged failure to act, which functions as an exception to the requirement for final agency action. *See ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1137 (9th Cir. 1998), *citing Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 511 (9th Cir.1997); *see also Al Otro Lado, Inc. v. Mayorkas*, No. 17-CV-02366-BAS-KSC, 2021 WL 3931890, at *8 (S.D. Cal. Sept. 2, 2021) (finding "no final agency

action is necessary" for plaintiff's claim that agency failed to act because "the Ninth Circuit has given several indications that finality is not a consideration when evaluating § 706(1) claims"). Therefore, because KCC has alleged that VA failed to act, final agency action is not a requirement for the Court to hear these claims.

**II.     VA's 12(b)(6) motion to dismiss for failure to state a claim should be denied.**

KCC has sufficiently stated a claim for relief under the due process clause of the United States Constitution. The due process clause of the Fifth Amendment provides that "[n]o person shall... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Generally, procedural due process requires adequate notice and a meaningful opportunity to be heard at some point before a right or interest is forfeited. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). Courts give "property interests" broad meaning, including non-tangible interests like "entitlement to the benefit created and defined by an independent source, such as state or federal law or regulation." *Higgins v. Spellings*, 663 F. Supp. 2d 788, 793 (W.D. Mo. 2009).

VA moves to dismiss the due process claim for three main reasons. First, while VA seems to concede that KCC has a property interest in the funds at issue in this case, VA claims that KCC has not adequately alleged that VA has deprived KCC of that funding because VA has refunded the offset amounts. The Court disagrees. KCC has a property interest in its funding and in the continuation of its previously approved aviation programs. Even with the return of the offset funds and the reinstatement of its program, the allegations that VA deprived KCC of the funds and cancelled the aviation program without proper notice and a hearing sufficiently states a claim for deprivation of a constitutionally protected property interest under the due process clause.

Second, VA asserts that KCC has not exhausted administrative remedies because the funds were returned and the SLP is now available to KCC to retroactively dispute the debt. This

contention is merely a re-packaging of the arguments above claiming that there has not been any final agency action. For the same reasons discussed above, VA's claim that KCC's due process claim is unripe and unexhausted fails.

Third, VA asserts that this action is moot. Federal courts lack jurisdiction to rule on moot claims. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). "A case becomes moot whenever it los[es] its character as a present, live controversy of the kind that must exist if [courts] are to avoid advisory opinions on abstract propositions of law." *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)). The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (internal quotation omitted); *see also Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (determining that a challenge to a superseded biological opinion was moot). Even if an action is not constitutionally moot, the court may dismiss a case as prudentially moot "if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief." *Deutsche Bank Nat. Tr. Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2004) (cleaned up). However, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.* (TOC), Inc., 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "If it did, the courts would be compelled to leave the 'defendant free to return to his old ways.'" *Id.* (quoting *City of Mesquite*, 455 U.S. at 283, and *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).

Here, VA claims that circumstances have changed to forestall any meaningful relief in this case:

> This case stems from KCC's contention that VA offset its funds without completing the SLP. But, as it has with both COCC and PCC, VA has agreed to refund KCC the Offset and submit the Tuition Overpayments to the SLP. Per that agreement, VA has refunded KCC over $83,000, and VA has committed to adjudicate the Tuition Overpayments via the SLP.

Def Mot. Dis. 21 (dkt. #26).

KCC argues that its claim is not moot because VA continues to argue that the School Liability Process is optional, it has failed to fully reverse the original liability determination, and it has continued to engage in challenged conduct. The Court agrees. So long as the VA considers the SLP optional, KCC cannot be assured that it will be given the entirety of the process it claims that it is due under both the APA and the due process clause. Moreover, the case cited by the VA is distinguishable from the case at bar. *See Heard v. United States Soc. Sec. Admin.*, 170 F. Supp. 3d 124, 132 (D.D.C. 2016). In *Heard*, the plaintiffs challenged the government's offset of plaintiffs' tax refunds without notice or opportunity for a hearing. *Id.* at 127. There, the court determined the case was moot only after the government refunded the offset taxes, and "waived the underlying debt" in its entirety. *Id.* Here, the VA has refunded the offset, but it has not relinquished and waived any entitlement to recover the debt. Moreover, KCC raises claims regarding the notices and hearings it was entitled to prior to any determination of the validity of the debt. These claims are not resolved by VA's subsequent actions to grant KCC a refund or the SLP process. KCC's claims are not moot, and VA's motion should be denied.

### III. VA's motion to dismiss KCC's claim for injunctive relief should be denied.

First, VA asserts that KCC's claim for injunctive relief is not viable because VA has confirmed that it will not collect the Tuition Overpayment debt prior to a final decision by the Committee (i.e., after submitting to the SLP). Therefore, "there is no relief to be provided by a

mandatory injunction." This argument fails for the same reasons above. Namely, VA continues to consider the SLP optional, and it has not waived the agency's entitlement to collect the debt.

Second, VA argues that "there is no claim for which the United States has waived sovereign immunity that would allow for injunctive relief." That argument is contradicted by the holding of *Alameda Cnty. v. Weinberger*, 520 F.2d 344 (9th Cir. 1975), in which the Ninth Circuit upheld an order for injunctive relief against a government agency for taking the same actions at issue in this case: changing the approval status of a government program and trying to retroactively claw back payments that the government had distributed years earlier.

Third, VA claims that KCC has not alleged the requisite basis for injunctive relief. Injunctive relief is an "extraordinary remedy" only available upon a showing of "irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). In APA cases, economic harm is considered to be an irreparable harm given that a party would not be able to recover economic damages in the APA case. *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018); 5 U.S.C. § 702 (permitting relief "other than money damages"); *see also Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1091 (9th Cir. 2015) (reaffirming that the harm flowing from a procedural violation can be irreparable). Here, KCC has alleged economic harm, which can be irreparable in this type of case, and it has alleged harm to KCC aviation students and the aviation program at KCC in general, which was shut down by the actions of VA. These alleged harms form a sufficient basis for injunctive relief.

Finally, VA challenges this claim because injunctive relief requires a showing of a real threat of an imminent "future injury." *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 951 (9th Cir. 2011)). While VA has assured the parties and the Court that it will not offset any

further funds without the SLP and a final determination by the Committee, KCC has raised a sufficient question regarding past assurances by the VA. Specifically, KCC alleges that on June 9, 2020, the VA informed KCC that it would suspend all collection action on debts owed by KCC. FAC, Ex. 2 (dkt. #25-2). However, the VA referred $1,138,812.06 of the Alleged Tuition/Fees Debt to the Treasury for offset between February 26, 2020, and April 30, 2021. Decl. of J.Lawrence; Def. Mot. to Dis., at ¶ 3. Thus, despite assurance that the debt collection would be suspended, the VA continued to refer the Alleged Tuition/Fees Debt to the Treasury. Then, between October 2021, and November 2021, the Treasury offset $83,130.11 from KCC's federal grant funds. *Id.* KCC claims that no notice or hearig was provided before the funds were offset. Plaintiff KCC has raised a sufficient question of VA's past and potential future actions to allege a claim for injunctive relief.

## **RECOMMENDATION**

For the foregoing reasons, VA's motion to dismiss (#26) should be denied.

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this ___22___ day of September, 2022.

_____
MARK D. CLARKE
United States Magistrate Judge